## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**KENNETH ALVAREZ and**
**SAMANTHA SILVER,**

**CIVIL ACTION NO.**

     **Plaintiffs,**

**v.**

**AMERICAN BANKERS INSURANCE**
**COMPANY OF FLORIDA,**

     **Defendant.**

_____/

## CIVIL ACTION COMPLAINT

Plaintiffs, **KENNETH ALVAREZ and SAMANTHA SILVER** ("Plaintiffs"), by and through their counsel, file this Complaint against Defendant, **AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA**, and sets forth as follows:

## INTRODUCTION

1.  This is an action by the Plaintiffs against their flood insurance carrier, AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA ("ABIC"), for benefits due and owing under Plaintiffs' flood insurance policy, as a result of damage/physical loss due to flooding from Hurricanes Helene and Milton.

2.  The Plaintiffs purchased a flood insurance policy, number

7506095289 from ABIC ("Policy"), which participates in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968 ("NFIA"), and consequently issued the subject federal Standard Flood Insurance Policy ("SFIP") to the Plaintiffs. *See Exhibit A – Policy Declaration Page and NFIP Form.*

3.    After Hurricanes Helene and Milton, ABIC failed to pay all damages due and owing under the flood insurance policy, including damages to the building and anchorage system caused by flood as defined in the policy.

4.    Plaintiffs have complied with all conditions precedent to maintenance of this lawsuit.

## PARTIES

5.    Plaintiffs, **KENNETH ALVAREZ and SAMANTHA SILVER**, are individuals owning property located at 4838 W. Flamingo Road, Tampa, Florida 33611 (the "Property").

6.    Defendant, **AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA**, is an NFIP insurance company authorized to do business in the State of Florida.

## JURISDICTION

7.    This Court has jurisdiction of this action pursuant to the National Flood Insurance Act, specifically 42 U.S.C. § 4001, *et seq.*

## FACTUAL BACKGROUND

8.     On or about September 26, 2024, and on October 5, 2024, Hurricanes Helene and Milton caused significant flooding at Plaintiffs' property, which resulted in damage/physical loss to the building and damage to the building's anchorage system.

9.     Specifically, the flooding caused approximately 88 cubic meters of soil and rock—which makes up part of the building's anchorage system—underneath and along the perimeter of the 3-story building's foundation to suddenly erode and wash out, which resulted in cracking to the foundation and other damage to the building and building anchorage system.

10.     After the second hurricane, ABIC's third-party adjuster, Catastrophe & National Claims ("CNC") inspected the property, but did not address the damage/physical loss to the foundation, building or building anchorage system as a result of the sudden erosion.

11.     To protect the property, the Plaintiffs immediately retained Precision Pavers, Inc. to repair the building anchorage foundation system by replenishing the rock and soil that made up the anchorage system.

12.     CNC also failed to include pictures of dangerous conditions of the property in its report.

13.     On January 13, 2025, ABIC sent Plaintiffs a partially confirmed and partially denied coverage determination letter ("Coverage Letter") in

conjunction with the NFIP finding that Plaintiffs were owed a Building

Payment Amount of $10,058.28 and no covered amount for contents. *See*

*Exhibit B – January 13, 2025 Coverage Letter.*

14.    The Coverage Letter did not specifically address damage to the

foundation or building anchorage system from the sudden flood-induced

erosion nor the damage to the second-floor interior footing above the sudden

erosion.  Rather, ABIC indirectly referred to the subject policy stating:

> We reviewed the Independent Adjuster's report dated 12-4-2024 which confirms your home is a post-FIRM elevated home in a special flood hazard area and as such, there is restricted coverage for building and contents items located below the first elevated floor. Please be advised, pursuant to the policy section III. PROPERTY INSURED A. Coverage A- Building Property #8 and B. Coverage B- Personal Property #5 the following items are restricted: finished floors, trim, wall coverings, doors, gate, and cabinetry.  We regret we are unable to include payment for the

> items listed above and must deny payment pursuant to the applicable policy language.

> The report also indicates damage to the following items landscape, pool and pool equipment.  Please be advised, pursuant to the policy section IV. PROPERTY NOT INSURED #6 and #14. We regret we are unable to include payment for the items listed above and must deny payment pursuant to the applicable policy language.

15.    The sudden erosion of the soil damaged the Property's anchorage

support system both underneath and along the perimeter of the building's

foundation leading to hairline/stress cracks or damage to the building.

16.    The NFIP extended the Flood Proof of Loss Deadline for

Hurricanes Helene and Milton until March 25, 2025, and April 7, 2025,

respectively.

17.    On March 5, 2025, Plaintiffs submitted their supplemental claim and proof of loss in the amount of $86,530.00 with corresponding documentation by certified mail and email as follows:

> As a result, and to prevent more significant damage, Mr. Alvarez immediately moved to mitigate the damage. Mr. Alvarez hired Precision Pavers, Inc. to provide immediate shoring-up, replenishing and stabilizing of the nearby soil. The work required excessive backfill and compaction of approximately 88 cubic tons of washed #57 granite rock.
>
> In considering whether this type of foundation damage, mitigation and foundational support work is covered under an NFIP policy, the undersigned reviewed the NFIP claims manual and the NFIP summary of coverage which states:

>> **HOW DOES <u>THE NFIP</u> DEFINE A FLOOD?**
>> Your NFIP flood insurance policy covers direct physical losses, damage or loss caused by a flood. In simple terms, a flood is an excess of water on land that normally is dry. The official definition used by the NFIP is "A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:
>>
>> ***
>>
>> <u>Collapse or subsidence of land along the shore of a</u> lake or <u>similar body of water as a result of erosion or undermining caused by wave</u>s or currents of water exceeding anticipated cyclical levels that result in a flood as defined above."

> Thereafter, we considered a 2023 appeal decision from the NFIP Federal Insurance Directorate. *See attached.* The appeal dealt with a number of issues, including total loss, which were denied by the NFIP. However importantly, the appeal also directly addressed coverage for foundation damage/support that results from collapse or subsidence of land as result of flood. More specifically, the NFIP appeal decision stated in its fifth bullet point:

>> <u>As it relates to the foundation of the building, the SFIP does cover damage to a building if the damage results from the collapse or subsidence of land</u> that is the direct result of sudden erosion or undermining to the building's support soil underneath or <u>directly along the perimeter foundation of the building</u>. It appears the association replenished the sand at the policyholder's property prior to the adjuster's and engineer's inspections. <u>The policyholder should submit to the insurer any documentation associated with cost for replenishing the foundation support soil at their property</u>

> In this case, as a result of both Hurricane Hele and Milton, the subject property suffered foundational damage/loss of foundational support from subsidence of land that was the direct result of either sudden erosion or undermining of the building's soil support directly along the perimeter foundation of the building. In this case, Mr. Alvarez retained Precision Pavers to replenish the foundation support at the perimeter/under the foundation of the building. The prior appeal decision found that the policyholder should submit any documentation associated with the cost for replenishing the foundation support soil at the property for payment.

18.     In response, ABIC requested a 28 U.S.C. 1746 signed consent from the Plaintiffs, which Plaintiffs provided.

19.     ABIC hired Donan Engineering ("Donan") to inspect the Property.

20.     On May 8, 2025, Donan contacted the undersigned's office stating that the ABIC's adjuster contacted Donan to schedule an inspection.

21.     On May 9, 2025, the third-party adjuster, CNC Catastrophe and National Claims ("CNC") sent an email stating:

Good afternoon,

I have been communication with my management team who is currently working with the carrier to move this claim forward. I have been informed this morning by my manger that the supplemental claim has been opened, and an engineer request with photos and all information has been shared with the carrier (American Bankers).

I was informed that an engineer has been requested, and the carrier American Bankers has hired an engineer to do a desk review of the damages and documentation that has been provided. The engineer will be providing a report advising the repairs needed and corresponding repairs for the foundational damage.

My management team will remain in communication with the carrier; When clarification is provided to CNC by the carrier, the field adjuster Joseph Stevens will proceed with writing the final report for the supplemental claim.

Thank you,

22.     The Donan inspection occurred on May 28, 2025, and the insureds were told a report would be forthcoming in two weeks.

23.     Over the summer, Plaintiffs counsel continued to follow up with CNC with each response stating that CNC was awaiting the engineering report.

24.     Finally, on August 11, 2025, CNC advised the undersigned's office:

Good afternoon,

At this time, the claim remains pending the results of the engineer's report, which has been requested from the carrier, American Bankers. Unfortunately, we do not yet have an estimated timeline for when the carrier will provide CNC with this report.

Once the engineer's findings are received, Field Adjuster Joseph Stevens will proceed with the review and processing of the supplemental claim.

Thank you for your patience and understanding.

25.    On August 14, 2025, the undersigned's office was instructed to contact ABIC directly:

Good afternoon Jessica,

The engineer was contracted by the carrier American Bakers, so I don't have any contact information to share as the carrier is responsible for the engineer.

Please feel free to contact American Bankers at 800-423-4403 or myfloodclaim@assurant.com.

26.    In response, on August 14, 2025, Plaintiffs' office sent the following correspondence attempting to determine why the Defendant declined a "written" report from Donan and unilaterally closed the claim and from what date the formal statute of limitations began to run:

> We hope this correspondence finds you well and thank you for Kacie's prompt response. After Kacie's email, our office contacted Donan Engineering ("Donan") to get to the bottom of what occurred with the Donan Engineering report and Mr. Alverez's request for reimbursement for his prompt action to mitigate any damages and shore up the soils underneath and directly along the perimeter of the foundation of the building.

> As you know, our office has been sending bi-weekly emails attempting to obtain Donan's engineering report—which Donan advised would be completed and provided within 2 weeks of the May 19, 2025 inspection—however, our office has been repeatedly told that the claim remains open pending the results of the Donan engineering report.

> Today, our office called Donan, and Donan advised it reached out to the

Assurant multiple times, and Donan allegedly provided a "verbal" report to Assurant, but as we understand it, Assurant declined that Donan produce a "written" report. Thereafter, it appears the Alvarez file was quietly closed without informing our office or the insured.

As you know, per the attached supplemental payment demand, subject policy, and the FEMA, National Flood Insurance Appeal Decision, Mr. Alvarez is entitled to the soil replenishment funds that Mr. Alvarez spent to immediately shore up the soils underneath and along the perimeter of the foundation at his three-story residence. Moreover, the FEMA appeal decision dealt with a scenario that is almost directly on point and advised that the policyholder should submit to the insurer any documentation associated with the cost of replenishing the foundation support soil at the property:

- As it relates to the foundation of the building, the SFIP does cover damage to a building if the damage results from the collapse or subsidence of land that is the direct result of sudden erosion or undermining to the building's support soil underneath or directly along the perimeter foundation of the building. It appears the association replenished the sand at the policyholder's property prior to the adjuster's and engineer's inspections. The policyholder should submit to the insurer any documentation associated with cost for replenishing the foundation support soil at their property.

In this case, an almost identical scenario has occurred, except that prior to the soil replenishing FEMA adjusters inspected the property and both witnessed and photographed the extensive damage and precarious nature of the soil erosion from under the three-story building.

In any event, in order to determine what has occurred and how Mr. Alvarez may recoup the significant cost of replenishing the foundation support at the property per the FEMA flood policy and guidelines and preventing any potential collapse of the three-story structure, we are also copying our last contact for at Assurant, Diana Miller, on this email, so everyone is on the same page.

Finally, given the foregoing scenario, please advise if 1) this case is "open" or "closed" 2) are we still awaiting a pending Donan Engineering report, and 3) given the unusual factual scenario described above, what is the deadline for Mr. Alvarez to file suit in this matter should the Parties be unable to resolve the dispute.

Our office looks forward to addressing both this important issue and hopefully an amicable resolution.

Please advise and many thanks.

27.    On September 29, 2025, the CNC third-party adjuster sent the

below correspondence to the undersigned:

> Good afternoon,
>
> My apologies for the delay. Our in-house adjuster reviewed the documentation and submitted the claim as a close without payment (CWOP).
> Based on the engineers report, comments that were notated was: The house was not structurally damaged due to hydrodynamic or lateral hydrostatic forces from the flood event, the house is not structurally damaged due to buoyant or vertical hydrostatic forces from the flood event, the stucco cracks and wall lean are not related to any forces from the flood events and the soil voids did not undermine the house's foundation.
>
> The Carrier (American Bankers) will issue a denial letter to the insured, once the insured receives that denial letter they will have 60 days from the date listed on that letter to file an appeal. If you have any additional questions, please let us know.

28.    In response, Plaintiffs requested the Donan Engineering report, but the CNC, the third-party adjuster again required the following signed statement from the insured:

> I can't release a copy of the engineer report. You may request a copy from American Bankers. I've attached below what would need to be sent to them.
>
> I've attached a copy of the Dwelling Policy.
>
> *Disclosure of Claim Files*    Policyholders may obtain a copy of their claim file by submitting a signed request to their NFIP insurer. At a minimum, the request must include the policyholder's full name; current address; and date and place of birth. The policyholder's signature must either be notarized or submitted with the following statement (per 28 U.S.C. § 1746):
>
>> *I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.*
>> *Executed on (date). (Signature)*

29.    On October 3. 2025, the undersigned's office sent the following correspondence to Defendant in an attempt to clarify the issues including the Donan distinction of "structural damage" versus physical loss caused by flood:

> I hope this correspondence finds you well. With respect to this supplemental claim, on Monday, September 29, 2025, Amber Hicks from CNC told us, **"The Carrier (American Bankers) will issue a denial letter to the insured, once the insured receives that denial letter they will have 60 days from the date listed on that letter to file an appeal. If you have any additional questions, please let us know."**
>
> However, it appears that in response to our request for a coverage determination letter to Mr. Alvarez's supplemental claim, this morning

you sent a response to Stefan at my office stating"[t]hat the claim was closed yesterday without payment based on the findings in the engineering report." Please include me on any future correspondence.

Unfortunately, your email response does not address the issues raised in our March 5, 2025 supplemental claim and demand, which included a notarized FEMA proof of loss and a FEMA appeal decision paying out a similar claim for replenishing the buildings support soil as the SFIP does cover "damage" to the building from subsidence of land caused by flood.

- As it relates to the foundation of the building, the SFIP does cover damage to a building if the damage results from the collapse or subsidence of land that is the direct result of sudden erosion or undermining to the building's support soil underneath or directly along the perimeter foundation of the building. It appears the association replenished the sand at the policyholder's property prior to the adjuster's and engineer's inspections. The policyholder should submit to the insurer any documentation associated with cost for replenishing the foundation support soil at their property.

This morning, I was able to review the Donan Engineering report and Donan itself admitted that the Alvarez foundation and building suffered "damage" as a result of the subsidence of land due to the flood. However, it appears that Donan attempts to make a distinction between "structural damage" and simply "damage."

If your position is that the claim is closed due to the Donan report, please provide a formal denial of Mr. Alvarez's March 5, 2025 supplemental claim within 7 days. As you may know, on September 18, 2025, American Banker's won a motion for summary judgment in the Middle District of Florida regarding the date upon which the statute of limitations begins to run under a NFIP flood policy. https://scholar.google.com/scholar_case?case=958502803918712 1199&q=Ghai+v.+American+Bankers+Ins.+Co.+of+Florida&hl=en&as _sdt=4,325. The decision has been delayed for quite some time due to the engineering report, and I obviously need this formal denial to preserve my client's rights. Additionally on January 13, 2025, American Banker's issued a partial coverage letter which denied certain aspects of Mr. Alvarez's claim. However, Mr. Alvarez's supplemental claim had not yet been submitted. We would appreciate this new formal denial addressing both issues for simplicity's sake.

In an abundance of caution, from what date does American Banker's contend that the statute of limitations begins to run on this supplemental flood claim, January 13, 2025 or today, October 3, 2025, by virtue of your email correspondence denying Mr. Alvarez's supplemental claim.

Also, if you could please point to any legal precedent or NFIP policy manual provisions that allow or provide for a distinction between "structural damage" and "damage" for this type of support soil replenishment claim, we believe this would accelerate resolution. The purpose for this type of coverage is to ensure that a building of this size does not collapse.

To recap, please advise as to the following:

- Will American Banker's issue a formal denial letter responding to Mr. Alvarez's March 5, 2025 supplemental claim within 7 days, as time is of the essence?
- CNC has represented that Mr. Alvarez's FEMA appeal deadline is 60 days from the date of this denial letter. Does the 60 day appeal deadline begin to run today based upon your email denying coverage?
- Is American Banker's open to an appraisal of this claim?
- On what date does American Banker's contend that the statute of limitations for Mr. Alvarez's supplemental claim began to run?

I look forward to your assistance in moving Mr. Alvarez's claim swiftly forward toward what we hope will be an amicable resolution and complying with any and all FEMA deadlines should Mr. Alvarez be forced to litigate this matter.

30.    On October 7, 2025, ABIC sent email correspondence denying Plaintiffs' supplemental claim for payment based upon a misunderstanding and mischaracterization of its flood policy and Donan's findings related thereto. ABIC stated:

Good afternoon,
Please find the copy of the denial letter sent to your office on 9/30/2025 attached to this email.
As to the for replenishing the buildings support soil, please note the engineer findings below:

"Frictional forces from floodwater can cause erosion and scour around foundations. Damage can occur when the foundation is undermined and loses bearing capacity. The displaced pavers and soil voids near the house's west side and southeast corner are indicative of soil erosion due to frictional forces from the flood events. The voids are adjacent to an exterior wall and column of the house, where foundations are expected below grade. However, given the size of the house (two elevated stories above a lower-level story, proximity to a body of water/location within a flood zone, and the year of construction, it would be expected that the house is founded on deep pile foundations. Soil voids near the top level of the piles (that are traditionally augered or driven to 30+ feet below grade) are negligible to the overall structural capacity and integrity of the piles. The soil voids did not undermine the house's foundation. Approximately 67 cubic yards (CY) of soil was displaced due to frictional forces from the flood events.

31.    Additionally, the attached ABIC second denial letter characterized

Donan Engineering's findings as follows stating that the residence was not "structurally damaged" by the flooding events. *See Exhibit C, September 30, 2025 – Second Denial Letter.*

32.    The subject policy has no "structural damage" requirement. Based upon Donan's report, ABIC completely fails to address the damage to the anchorage system and incorrectly imposes a non-existent requirement of "structural damage" in its denial as follows:

Thank you for trusting American Bankers Insurance Company of Florida (ABIC) in partnership with the National Flood Insurance Program (NFIP) for your flood insurance needs.

We have reviewed the request for an additional payment and at this time, we have determined that no additional payment is owed.

As you are aware, we retained a licensed engineer to inspect the property. The engineer concluded that the damages to the foundation in the form of hairline and stress cracking from the sudden erosion of soil were not a direct result of a 'flood' as defined in the policy, but rather from historical differential settlement of the house's foundations and/or expansion and contraction of the stucco, unrelated to any forces from the flood events. Specifically, the engineer concluded:

DONAN ENGINEERING confirmed the following:

• No evidence of inundation of the elevated floors during either flood event is on the property.

• The house is not structurally damaged due to hydrodynamic, hydrostatic, buoyant, or frictional forces from the flood event. • Approximately 67 CY of soil was displaced due to frictional forces from the flood events.

• The leaning wall, sloped floor, and stucco cracks are the result of the historical differential settlement of the house's foundations and/or expansion and contraction of the stucco, unrelated to any forces from the flood events.

Please be advised, pursuant to the Policy Agreement (I. AGREEMENT C.) the policy pays for direct physical loss by or from flood only.   The policy defines this in the section DEFINITIONS B.#1 and C. #14.   A flood is defined as:

Flood, as used in this flood insurance policy, means: A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from:

    a. Overflow of inland or tidal waters;

    b. Unusual and rapid accumulation or runoff of surface waters from any source;

    c. Mudflow.

In addition, pursuant to the policy section V. EXCLUSIONS C., we do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. The SFIP does not cover damage that results when saturated soils cause the soil below ground level to sink, expand, compact, destabilize, or otherwise lose its load-bearing capacity such as from voids or rotten organic matter when the soil dries.

33.    ABIC failed to include the second part 2. of the flood definition which also includes:

> 2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in B.1.a above.

34.    Finally, ABIC incorrectly applies the earth movement exclusion and its exceptions to coverage for flood related damage, which is at issue here.

35.    Despite Plaintiffs' request regarding a formal deadline regarding a statute of limitation on the subject claim, ABIC failed to answer this question and stated a FEMA appeal could be filed within 60 days.

36.    Plaintiffs timely filed their appeal and on December 5, 2025 FEMA accepted Plaintiffs' appeal as timely filed and eligible but stated that any determination would likely take months.

37.    In an abundance of caution, Plaintiffs file this complaint to avoid waiving any litigation options given ABIC's January 13, 2025 partially confirmed and partially denied coverage determination letter.

## APPLICABLE NFIP POLICY LANGUAGE

38.    Plaintiffs set forth the following applicable NFIP policy language:

### I. AGREEMENT

A. This policy insures the following types of property only:
1. A one to four family residential building, not under a condominium form of ownership

**C. We will pay you for direct physical loss by or from flood** to your insured property if you:

1. Have paid the full amount due (including applicable premiums, surcharges, and fees);
2. Comply with all terms and conditions of this policy; *and*
3. Have furnished accurate information and statements.

## II. <u>DEFINITIONS</u>

**B. Flood, as used in this flood insurance policy, means:**

1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from:

a. Overflow of inland or tidal waters;
b. Unusual and rapid accumulation or runoff of surface waters from any source;
c. Mudflow.

**2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in B.1.a above.**

6. Building
a. A structure with two or more outside rigid walls and a fully secured roof that is affixed to a permanent site;

**14. Direct Physical Loss By or From Flood. Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.**

15. Dwelling. A building designed for use as a residence for no more than four families or a single-family unit in a condominium building.

16. Elevated Building. A building that has no basement and that has its lowest elevated floor raised above

ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

20. Mudflow. A river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not mudflows.

**24. Post-FIRM Building**. A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

## III. PROPERTY INSURED

**A. <u>Coverage A—Building Property</u>
<u>We insure against direct physical loss by or from flood to:</u>**
1. The dwelling at the described location, or for a period of 45 days at another location as set forth in III.C.2.b, Property Removed to Safety.

**8. <u>Items of property below the lowest elevated floor of an elevated post-FIRM building located in Zones</u>**
<u>SFIP DWELLING</u> FORM PAGE 5 OF 30
A1–A30, **<u>AE</u>**, AH, AR, AR/A, AR/AE, AR/AH, AR/A1–A30, V1–V30, or VE, or in a basement regardless of the zone. **<u>Coverage is limited to the following:</u>**

**a. <u>Any of the following items, if installed in their functioning locations</u>** and, if necessary for operation, connected to a power source:

**(17) <u>Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.</u>**

## V. <u>EXCLUSIONS</u>

**C. We do not insure for loss
to property caused directly by
earth movement even if the earth
movement is caused by flood. Some
examples of earth movement that we
do not cover are:**

1. Earthquake;
2. Landslide;
3. Land subsidence;
4. Sinkholes;
5. Destabilization or movement
of land that results from accumulation
of water in subsurface
land area; *or*
6. Gradual erosion.

**We do, however, pay for losses from
mudflow and *land subsidence as a
result of erosion that are specifically
insured under our definition of flood*
(see II.B.1.c and II.B.2).**

39.    This subject damage resulted from sudden land subsidence as a
result of erosion that is specifically insured under NFIP's definition of flood for
damage to both the building and under section 8., the anchorage system.

## DONAN'S FINDINGS IMPLICATING COVERAGE

40.    On September 26, 2024, the Plaintiffs were at the property when
floodwater approximately 4 to 5 feet in depth inundated the lower level of the
house.

41.    In Plaintiffs' post-FIRM building, Donan found a high-water mark
of 42 inches from the top of the garage's painted concrete slab.

42.    While Donan did not witness the actual voids underneath and

along the perimeter of the foundation because CNC did not engage an engineer until after the Plaintiffs repaired the property, Donan did the triangular-shaped soil void 54 inches deep at the southwest corner of the adjacent property to the east.

43.     Additionally, on the ground level, Donan found cracking damage on the first floor in the exterior CMUs and in the east garage.

44.     On the first elevated floor directly above the sudden flood erosion and washout damaging the anchorage system, Donan found that the recorded elevations slope down toward the southeast corner of the structure where the sudden erosion and foundation and anchorage system damage occurred.

45.     Donan determined that the soil voids, which encompass the building anchorage system, were consistent with the presence of moving water on the property.

46.     Donan concluded that hydrodynamic and lateral hydrostatic forces from floodwater exert a lateral pressure on a structure.

47.     Thereafter, applying the wrong "damage" requirement as defined in the policy, Donan found that the house was not "structurally damaged" due to hydrodynamic or lateral hydrostatic forces from the flood event.

48.     Finally, Donan did not address damage to the structure's anchorage system.

## COUNT ONE – BREACH OF CONTRACT

49.    Plaintiffs reallege paragraphs 1 through 48 as if fully set forth herein.

50.    Plaintiffs, at all relevant times, have been the owners the Property.

51.    Plaintiffs purchased the Policy from ABIC, which covered the property at issue in this matter at all relevant times.

52.    All premiums on the Policy were paid, and the Policy was in full force and effect at all relevant times herein.

53.    On or about September–October 2024, Hurricanes Helene and Milton caused flooding affecting Plaintiffs' property.

54.    Hurricane Helene and Milton were flood events, a covered risk under the Policy.

55.    Plaintiffs' property sustained physical damage as a result of flood waters, as defined by the Policy, associated with Hurricanes Helene and Milton.

56.    The loss included sudden erosion and undermining of the building's support soil anchorage system underneath and directly along the perimeter foundation (including the southwest and southeast corners), causing foundation distress and cracking.

57.    The NFIP coverage, as acknowledged in claim communications,

applies when physical loss from flood results from the collapse or subsidence of land that is the direct result of sudden erosion or undermining to the building's anchorage system and support soil underneath or directly along the perimeter foundation, and policyholders are directed to submit documentation associated with the cost of replenishing the foundation anchorage support system.

58.    Following the flooding, Plaintiffs properly and promptly submitted an insurance claim to ABIC for damage to their property caused by flood waters associated with Hurricanes Helene and Milton (Claim No. 7506095289).

59.    On or about January 13, 2025, ABIC informed Plaintiffs that it would issue payment in the amount of $10,058.28 for covered Building damages under the Policy.

60.    ABIC's estimate of damage and payment were insufficient to correct the damage caused by flood waters associated with Hurricanes Helene and Milton. To mitigate and prevent further damage, Plaintiffs retained Precision Pavers, Inc., which installed approximately 88 cubic tons of #57 granite rock to replenish/stabilize the undermined anchorage system.

61.    At that time, Precision Pavers invoiced $93,310.00 (including $88,530.00 for the rock/backfill scope and $4,780.00 for electrical), of which $73,310.00 has been paid, leaving a balance due of $30,000.00.

62.     On or about March 4–5, 2025, Plaintiffs submitted a Sworn Proof of Loss to ABIC pursuant to the SFIP.

63.     On March 5, 2025, Plaintiffs' counsel transmitted the supplemental Proof of Loss and supporting correspondence to ABIC, and on March 12, 2025, followed up and re-submitted the materials.

64.     For claims arising from Hurricanes Helene and Milton, FEMA extended the SFIP Proof of Loss deadline to 180 calendar days from the date of loss.

65.     On March 12, 2025, ABIC confirmed it had forwarded the materials to the outside adjusting firm and that a supplemental claim had been opened for this policy.

66.     Despite these assurances, on June 25, 2025, CNC stated it had not received the engineer report from ABIC and that the field adjuster could not complete the final report for the supplemental claim until after receiving and reviewing the engineer's findings.

67.     On August 14, 2025, Plaintiffs' counsel documented that Donan Engineering advised it had provided a "verbal" report to Assurant, that Assurant allegedly declined a "written" report, and that the Alvarez file then appeared to have been quietly closed without informing Plaintiffs or their counsel, while Plaintiffs were simultaneously told the claim remained open pending the engineer report.

68.    In the course of adjustment, Assurant stated the engineer report would be reviewed by the outside adjusting firm; on September 2, 2025, CNC advised that the engineer would complete the report "tomorrow" and that it should be received by the end of that week.

69.    On September 10, 2025, Plaintiffs' counsel again followed up regarding receipt of the engineer report.

70.    ABIC has breached the terms of the Policy by failing and refusing to pay all amounts due to the Plaintiffs pursuant to the terms of the Policy. American's breach includes failure to timely and fully adjust the supplemental claim, failure to consider covered replenishment/stabilization of undermined foundation support soil, and failure to issue additional payments owed under the SFIP in light of the above facts.

71.    Plaintiffs have complied with all conditions precedent to the bringing of this action or, in the alternative, American has waived same. Plaintiffs submitted the supplemental Proof of Loss and supporting documentation and repeatedly followed up; Assurant acknowledged opening a supplemental claim.

72.    As a result of ABIC's failure to cover the damage to the foundation and anchorage system, Plaintiffs have suffered damages, as described above including, but not limited to the amounts to which they are legally entitled to recover under the terms of the subject Policy. Damages include, without

limitation, covered Building loss and mitigation expenses reasonably incurred to replenish and stabilize the undermined foundation support soil.

**WHEREFORE**, Plaintiffs, **KENNETH ALVAREZ and SAMANTHA SILVER**, bring this action against Defendant, **AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,** and request the following relief:

1. Entry of judgment in their favor for all amounts to which they are entitled under the terms of the Policy;

2. An award of the costs of this action; and

3. Such other and further relief as this Court deems just and appropriate.

By: ____/s/___*Joshua S. Smith*_____
**JOSHUA SMITH, P.A.**
Joshua S. Smith, Esquire
FBN:      108915
3825 Henderson Blvd., Suite 401
Tampa, FL 33629
Emails: jsmith@jspalaw.com
            jhoffman@jspalaw.com
            kboodoo@jspalaw.com
Telephone: 813-254-1800
Attorney for Plaintiff